UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DEBRA S. GIGOWSKI, )
)
        Plaintiff, )   Case No. 1:12-cv-7
)
v. )   Honorable Gordon J. Quist
)
COMMISSIONER OF )
SOCIAL SECURITY, )
)   **REPORT AND RECOMMENDATION**
        Defendant. )
_____)

        This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On February 25, 2010, plaintiff filed her applications for benefits alleging a January 7, 2008 onset of disability.[1] (A.R. 121-33). Plaintiff's claims for benefits were denied on initial review. (A.R. 75-82). On May 18, 2011, she received an administrative hearing, at which she was represented by counsel. (A.R. 30-58). On May 25, 2011, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 16-24). On November 29, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

    [1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n. 5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, March 2010 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff asks the court to remand the matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence. Alternatively, plaintiff argues that the ALJ's decision should be overturned on the following grounds:

1. The ALJ's decision did not "properly evaluate the treating source's opinion under 20 CFR § 404.1527(d)(2)[;]" and

2. "The ALJ's exclusion of any handling or gripping limitations from the Residual Functional Capacity determination and Hypothetical Questioning denotes a lack of substantial evidence."

(Statement of Errors, Plf. Brief at 2, docket # 16). I recommend that plaintiff's request for remand be denied because she has not carried her statutory burden under sentence six of 42 U.S.C. § 405(g). I further recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th

Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from January 7, 2008, through the date of the ALJ's decision. (A.R. 18). Plaintiff had not engaged in substantial gainful activity on or after January 7, 2008. (A.R. 18). The ALJ found that plaintiff had the following severe impairments: "right and left thumb arthritis, left metacarpal

fracture with post-operative changes, low back pain, and depression." (A.R. 18). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot lift over 10 pounds with the left hand at any time. She cannot perform constant fingering with her hands, bilaterally. The claimant is further limited to simple, routine and repetitive tasks.

(A.R. 21). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 21-23). Plaintiff did not have past relevant work. (A.R. 23). Plaintiff was 47-years-old as of her alleged onset of disability. She was classified as a younger individual through December 21, 2010. On and after December 22, 2010, plaintiff was classified as an individual closely approaching advanced age. (A.R. 23). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 23). The transferability of jobs skills was not an issue because plaintiff lacked past relevant work. (A.R. 23). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 13,500 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 54-55). The ALJ found that this constituted a significant number of jobs. Using Rules 202.13 and 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 23-24).

**1.**

Plaintiff asks the court to remand this matter to the Commissioner for consideration of the evidence she presented in support of her application for discretionary review by the Appeals Council. (Plf. Brief at 10-11; Reply Brief at 5) "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence-six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *see also Smith v. Commissioner*, 473 F. App'x 443, 445-46 (6th Cir. 2012).

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The proffered evidence is as follows: Dean J. Toriello, M.D.'s progress notes dated August 8, 2011 (A.R. 405-06), a magnetic resonance imaging (MRI) report dated September 27, 2011 (A.R. 407-08), progress notes

dated August 15 and October 6, 2011, from Ramin Rahimi, D.O. (A.R. 409-14), and physical therapy notes from August and September 2011 (A.R. 415-20). This evidence is new because it was generated after the ALJ's decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. *See Courter v. Commissioner*, 479 F. App'x 713, 725 (6th Cir. 2012). The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried, her burden of demonstrating good cause.

Moreover, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *Foster v. Halter*, 279 F.3d at 357. Plaintiff argues that the result of the MRI taken in September 2011 is material (Plf. Brief at 10-11), but she completely ignores her burden with regard to every other new document. The MRI taken four months after the ALJ's decision showed "[d]egenerative disc disease without evidence of focal disc herniation or spinal stenosis." (A.R. 408). If this MRI had been presented to the ALJ, it would not have reasonably persuaded her to reach a different conclusion on the issue of whether plaintiff was disabled during the relevant time period: January 7, 2008, through May 25, 2011.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's request for a sentence-six remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ committed reversible error by "not properly evaluat[ing]" the opinions of her treating surgeon, Dr. Toriello. (Plf. Brief at 4-8; Reply Brief at 1-4). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative

bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

On January 7, 2008, plaintiff was involved in a car accident. She reported that her non-dominant left hand had been injured when the air bag deployed. Plaintiff was diagnosed as having a broken left thumb (left fifth metacarpal). (A.R. 255, 258). On January 10, 2008, Dr. Toriello performed surgery to correct the "severely comminuted displaced fracture, left fifth metacarpal." (A.R. 253). Plaintiff tolerated the procedure well, and x-rays showed good alignment of the fracture with good pin placement. (A.R. 248). The following month, Dr. Toriello removed "multiple retained K wires from plaintiff's left hand" without incident. (A.R. 248).

On March 25, 2008, plaintiff advised Dr. Toriello that she would be taking a vacation in Florida. Plaintiff was "strongly encouraged" to continue with her hand exercise program while she was away on vacation. (A.R. 367).

On May 21, 2008, plaintiff expressed doubts about her ability to return to work. Dr. Toriello recorded plaintiff's complaints and noted that plaintiff's "work activities consist[ed] of activities in a school cafeteria." He stated that plaintiff should be able to return to work after the Memorial Day holiday with a three-pound weight restriction on her surgically repaired left hand and that she should avoid repetitive wrist motion and gripping and grasping. (A.R. 364).

On June 30, 2008, Dr. Toriello reiterated that plaintiff could return to work at her food service job. He stated: "Patient was cleared to return to work in a modified capacity with a ten-pounds weight restriction with respect to her left hand and the need to avoid repetitive wrist motion and gripping and grasping." (A.R. 362). In August 2008, Dr. Toriello continued the same restrictions regarding plaintiff's use of her left hand. (A.R. 361).

On October 15, 2008, plaintiff complained to Dr. Toriello that she was experiencing pain in her right thumb. He noted advanced osteoarthritic changes involving the carpometacarpal joint. He recommended outpatient surgery on plaintiff's right thumb. (A.R. 360).

On January 9, 2009, Dr. Toriello performed a "[b]asilar joint arthroplasty and reconstruction, right thumb" to address the osteoarthritis of the carpometacarpal joint in plaintiff's right thumb. Plaintiff tolerated the procedure well and she did not experience post-surgical complications. (A.R. 243-44, 359). In February 2009, Dr. Toriello noted that plaintiff was doing well. (A.R. 356-57). Toriello's progress notes dated March 26, 2009 state as follows:

> HISTORY: Debra Gigowski is seen today for a followup visit for her basilar joint arthroplasty reconstruction. She was doing well until she injured her hand last week at a basketball game. She states that she received a very aggressive "high five." She slapped another person[']s palm with hers resulting in pain. She states that she now has some thenar muscle discomfort and some pain at the basillar joint site. Prior to that she had no pain whatsoever and was progressing nicely in therapy.
>
> PHYSICAL EXAMINATION: Examination today reveals the multiple surgical scars to be soft and nontender. There is good motion and stability at the CMC joint. She has good motion at the MCP joint. There is no crepitus with manipulation of the reconstructed joint, and she has improving pinch and grip strength.

(A.R. 354).

On April 30, 2009, plaintiff reported to Dr. Toriello that she was "quite pleased with her current status." She had "5 pounds of key pinch strength on the right compared to 10 pounds on the left. Pinching [was] painful on the left side." Dr. Toriello agreed that plaintiff was "doing very well" and encouraged plaintiff to continue with her home exercise program, particularly with respect to strengthening exercises. (A.R. 352).

On July 30, 2009, Dr. Toriello found that plaintiff had "excellent motion and stability of the reconstructed CMC joint." (A.R. 350). Plaintiff had "10 pounds of pain free key pinch on the

right. Finkelstein[']s test [was] negative." (A.R. 350). The progress note concluded as follows: "This patient has done very well at this time. She has some arthritic changes involving her opposite thumb, but currently her discomfort is very well tolerated. She has chosen not to proceed with any additional treatment. I was supportive of this. . . . A return visit has not been scheduled. She was encouraged to contact me if any problems develop." (A.R. 350).

Plaintiff returned to Dr. Toriello's office on May 20, 2010, and she reported that she was experiencing a "new problem." She stated that she was experiencing pain involving her left thumb, and that it occurred with gripping and grasping and locking. She related that she had been experiencing this pain for about four or five months. Dr. Toriello found no evidence of trauma and x-rays of plaintiff's left thumb showed no acute bony abnormalities. Plaintiff was not taking any prescription medications. Dr. Toriello's impression was that plaintiff had osteoarthritis of the carpometacarpal joint, left thumb. He stated that plaintiff did well with the basillar joint reconstruction on her right thumb, and that she might ultimately benefit from having the same procedure performed on her left thumb. He stated that plaintiff could be a candidate for a Cortisone injection if she developed progressive symptoms. (A.R. 349).

On May 25, 2010, R. Scott Lazarra, M.D., performed a consultative examination. Plaintiff reported that she was not taking any pain medication. Dr. Lazarra noted: "She is able to do activities of daily living. The patient is able to button and zip. She is able to tie, open jars and put on jewelry. She is able to drive. The patient is able to cook. She still enjoys gardening. She denies any problems sitting, standing or walking. The patient is able to lift about 10 pounds with the left but has no problems lifting with the right." (A.R. 338). Plaintiff's cranial nerves were intact.

Her motor strength and tone were normal. Her reflexes were 2+ and symmetrical. (A.R. 341). Dr. Lazarra's musculoskeletal findings were as follows:

> There is no evidence of joint laxity or effusion. There is crepitance at the right hand joint. Grip strength remains intact on the right and is diminished to 70% remaining on the left. Dexterity is unimpaired on the right and there is mild digital dexterity loss on the left. The patient could pick up a coin, button clothing, and open a door. The patient had no difficulty getting on and off the examination table, no difficulty heel and toe walking, no difficulty squatting, and no difficulty hopping.

(A.R. 339).

On July 1, 2010, plaintiff returned to Dr. Toriello. She reported that she had episodes of clicking and pain in her left thumb and some discomfort with pinching and gripping. Dr. Toriello made the following findings:

> PHYSICAL EXAMINATION: Examination today reveals mild swelling over the dorsal base of the left thumb. She has a weakly positive grind test with manipulation of the CMC joint and some instability. Finkelstein test is negative. I could not palpate any crepitus or clicking or triggering with palpation overlying the tendons of the first compartment. On the volar surface, there is not a nodule on the flexor tendon. The flexor tendon function is good with unrestricted motion and no triggering, locking, or clicking. Key pinch is nine pounds on the right and eight pounds on the left. Grip strength is 45 pounds on the right and 40 pounds on the left.
>
> IMPRESSION: Mild to moderate osteoarthritis carpometacarpal joint left thumb.

(A.R. 348).

On July 1, 2010, Dr. Toriello completed a "Manipulative Limits Residual Functional Capacity Questionnaire." He stated that he had last measured plaintiff's grip strength on June 18, 2009. Her grip strength had been 44 pounds on the right and 48 pounds on the left. He offered an opinion that plaintiff should "rarely" lift five pounds. He indicated that plaintiff reported pain in her right thumb and bilateral pinch strength weakness with pain, greater on the right side than on the left. He stated that during an 8-hour work day, plaintiff should be limited in both hands to grasping,

-12-

turning, twisting objects or performing fine manipulations ten-to-twenty percent of the time. He offered his opinion that plaintiff would frequently experience pain and be required to take unscheduled fifteen minute breaks every 1-to-2 hours. He stated that plaintiff should not perform "repetitive gripping, pinching." (A.R. 374).

The ALJ carefully explained why the extreme restrictions Dr. Toriello suggested in his RFC questionnaire responses were not included in her factual finding regarding plaintiff's RFC:

> The records of Dr. Dean Toriello, the surgeon, make it clear that the claimant had a very good recovery from her left hand fracture surgery. By June 2008, she was allowed to return to work as long as she avoided repetitive wrist motion, gripping and grasping, as well as no lifting over 10 pounds with that hand (Exhibit 8F/15). She had surgery on the right thumb in early 2009. In April 2009, the claimant advised Dr. Toriello that she was "pleased" with her right thumb recovery (ibid, at 5). Although her left thumb was somewhat painful, she still indicated she was "doing very well." She repeated that opinion in July 2009 (id, at 3).
>
> It appears from the records that the left thumb flared up again in early 2010 (id, at 2). X-rays revealed arthritis, but Dr. Toriello characterized it as "mild to moderate" (id, at 1). The claimant indicated she did not want surgery on that thumb. Given the good results from the left hand surgery and the right thumb surgery, refusal to have surgery on the left thumb strongly suggests that the pain was not very bad.
>
> Modest pain and good function can also be inferred from the information contained in the consultative examination of Dr. Scott Lazzara in May 2010 (Exhibit 6F). At that time, the claimant advised Dr. Lazzara that she could perform her activities of daily living, open jars, drive, and perform gardening activities. She generally denied problems with sitting, standing, or walking (ibid). She noted she was limited to lifting 10 pounds on the left – which is the same as Dr. Toriello's restrictions – and no limitations on the right. This is a far cry from the functional limitations she alleged and described at her hearing, but is quite consistent [with] Dr. Toriello's history and findings on examination.
>
> As for the opinion evidence, the claimant submitted the statement of Dr. Toriello (Exhibit 10F). While Dr. Toriello's conclusions are entitled to serious consideration in light of his role as a treating surgeon, his conclusions in this case are not supported by his own treatment notes. The only ongoing functional limitations in his notes are those of avoiding repetitive use of the left hand, and no lifting over 10 pounds on the left. He reports a history of success with regard to treatment of the right thumb and only mild to moderate thumb arthritis on the left. Yet his opinion would prevent the claimant from lifting over 10 pounds more than rarely, even with both hands. He indicated that she would need breaks of 15 minutes every 1-2 hours. There is no basis for such limitations in the treatment notes. I give little or no

weight to this opinion of Dr. Toriello, relying instead on the findings contained in Dr. Lazarra's evaluation and the minimal findings of the primary care provider's notes, to support the residual functional capacity. The limitation of simple, routine and repetitive work is based on the rather minimal evidence of depression, combined with the chronic pain in the left hand and the need for pain medication at times.

(A.R. 22-23). I find no violation of the treating physician rule. The ALJ made appropriate findings, based on the objective evidence, and she accorded the opinion of Dr. Toriello the weight it deserved.

### 3.

Plaintiff argues that the ALJ's factual finding regarding her RFC is not supported by substantial evidence because it did not include "handling or gripping limitations."[2] (Plf. Brief at 9; Reply Brief at 4-5). She argues that the ALJ "should have at least minimally accounted for the Plaintiff's reduced ability to grip objects, as even Dr. Lazarra found Plaintiff to have diminished grip strength in the left hand." (*Id.*). Plaintiff brushes aside Dr. Lazarra's findings that plaintiff had no loss of grip strength on the right and that her loss on the left was "mild." Plaintiff "was still able to do manipulative tasks." (A.R. 339-40). She was not taking any pain medication and continued to engage in gardening. Plaintiff reported that she was able to lift about 10 pounds with her left hand but had "no problems lifting with the right." (A.R. 338). On consideration of the entire record, the ALJ found that plaintiff retained the RFC for a limited range of light work that did not involve lifting more than 10 pounds with her left hand and plaintiff could not perform work requiring constant fingering with her hands, bilaterally. I find that the ALJ's factual finding regarding plaintiff's RFC is supported by substantial evidence. RFC is the most, not the least, a claimant can do despite her

---

[2]The portion of plaintiff's reply brief attempting to challenge the ALJ's RFC finding on the basis of evidence that was never presented to the ALJ (Reply Brief at 5) must be disregarded. *See Foster v. Halter*, 279 F.3d at 357.

impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007).

Plaintiff makes a related argument that the hypothetical question to the VE was deficient. Plaintiff's challenge to the adequacy of the hypothetical question posed to the VE is a mere reformulation of her unsuccessful challenge to the ALJ's RFC determination. The ALJ found that plaintiff's subjective complaints were not fully credible and that she retained the RFC for a limited range of light work. It is well settled that a hypothetical question to a VE need not include unsubstantiated limitations. *See Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010); *Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which [s]he has deemed credible."); *see also Justice v. Commissioner*, No. 12-3150, slip op. at 10 (6th Cir. Feb. 22, 2013). The ALJ's hypothetical question included all the limitations she found to be credible.

**Recommended Disposition**

For the reasons set forth herein, I recommend that plaintiff's request for remand under sentence six of 42 U.S.C. § 405(g) be denied. I further recommend that the Commissioner's decision be affirmed.

Dated: February 25, 2013         /s/  Joseph G. Scoville
                                 United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file

timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).